IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| *NORWOOD-REDFIELD APARTMENTS LIMITED PARTNERSHIP,* ) ) ) | |
| Plaintiff, ) ) | |
| v. ) ) ) | Cause No. 4:16-cv-00639 |
| *AMERICAN FAMILY MUTUAL INSURANCE COMPANY,* ) ) ) ) | |
| Defendant. ) ) | |

## DEFENDANT AMERICAN FAMILY MUTUAL INSURANCE COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT

COMES NOW Defendant American Family Mutual Insurance Company ("AFMIC"), by and through its counsel of record, Sandberg Phoenix & von Gontard P.C., pursuant to Federal Rule of Civil Procedure 56(a) and Local Rule 7 – 4.01, and states as follows:

## I.    INTRODUCTION

Plaintiff Norwood-Redfield Apartments Limited Partnership ("Plaintiff") asserts against AFMIC claims for breach of contract (Count I) and vexatious refusal to pay (Count II) for amounts purportedly due under a Businessowners Policy AFMIC issued to Plaintiff ("Policy"). Plaintiff owns an apartment complex in Normandy, Missouri consisting of 32 separate buildings. The Policy affords blanket building coverage up to a $31,773,600.00 Limit of Insurance pursuant to the Section I Declarations and a blanket coverage endorsement.

On December 18, 2010, a fire damaged three apartment buildings known as Buildings 6, 7, and 9. The remaining 29 buildings suffered no damage. Plaintiff contends the fire destroyed Building 7, and thereby resulted in a "total loss" within the meaning of Missouri's Valued Policy

Statutes, RSMo. §§ 379.140 and 379.160.3, to entitle it to the full Limit of Insurance under the Policy.  The fire damaged, but did not destroy, Buildings 6 and 9.  As a result of the fire, AFMIC made multiple payments to Plaintiff and third-party contractors totaling $2,897,896.90.  Plaintiff alleges AFMIC's payments are insufficient, claiming it owes the $31,773,600.00 Limit of Insurance for the "total loss" of Building 7, and the failure to pay the full limit constitutes a breach of contract and vexatious refusal to pay a covered loss.  AFMIC maintains the Missouri's Valued Policy Statutes do not apply to Plaintiff's loss.  Rather, the amount owed to Plaintiff is determined by the Policy's Section I "Loss Payment" provisions.  AFMIC's payments satisfy those provisions.

Thus, the basis of Plaintiff's claims rests on application of the Missouri's Valued Policy Statutes and the blanket coverage endorsement.  Whether the Missouri Valued Policy Statutes govern the amount of loss for the fire and entitle Plaintiff to the Policy's full limits of insurance involves questions of law appropriate for disposition by summary judgment.  The facts material to this question are undisputed, making this matter ripe for summary judgment.

## II.   ARGUMENT

### A.  Standard for Summary Judgment Motion

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all of the information before the court shows that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).  Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  If

2

the nonmoving party has failed to "make a showing sufficient to establish the existence of an element essential to that party's case, ... there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex,* 477 U.S. at 322-23.

"Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327.

**B.  Plaintiff is not entitled to the Policy's full limit as a matter of law**

Plaintiff claims it is entitled to the blanket limit of insurance, i.e., the $31,773,600.00 Building Blanket Limit of Insurance on the theory the Policy is a "valued policy" by statute and the destruction of Building 7 is a "total loss."   Critical to addressing Plaintiff's position and resolving the legal question at bar is the design and nature of two distinct concepts: blanket insurance policies and valued policies.   Careful consideration of the purpose of each insurance concept reveals the legal fallacies of Plaintiff's claim.   Contrary to Plaintiff's assertion, the Policy is not a valued policy as a matter of law and thus, Plaintiff is not entitled to the full Limits of Insurance for its claimed fire damage.

*1.  The Policy's Blanket Coverage Endorsement*

Plaintiff claims "Building 7 was insured by Defendant against fire in the amount of $31,773,600 pursuant to a Blanket Coverage Endorsement and declarations included as part of the Businessowners Policy."  *Petition*, ¶ 7.  This allegation – the foundation of Plaintiff's breach of contract and vexatious refusal claims – presents a pure question of law.  *Midwest Reg'l Allergy v. Cincinnati Ins. Co.*, 795 F.3d 853, 856 (8th Cir. 2015) ("Under Missouri law, the

3

interpretation of an insurance policy is a question of law.").[1]    The Policy's Blanket Coverage Endorsement provides as follows:

> The most we will pay for loss or damage in any one occurrence is the applicable Limit of Insurance shown in the Declarations. When a coverage is Blanket, the Limit of Insurance shown in the Declarations applies to all the premises described in the Declarations for that coverage. All policy and endorsement language that refers to the Limit of Insurance shown in the Declarations also applies to any Blanket Coverage Limit of Insurance.

Pursuant to the Blanket Coverage Endorsement, the Limit of Insurance shown in the Policy's Declarations, $31,773,600.00, "applies to all the premises described in the Declarations for the coverage".   The Declarations identify and describe 32 separate buildings consisting of the Norwood Redfield Court Apartment complex, including Buildings 6, 7, and 9.

The Missouri Supreme Court has recognized the definition of "blanket insurance" as a term of art, to mean: "[I]nsurance that invariably covers and attaches to every item of property described therein. If the loss of one item exhausts the whole amount of the policy, the entire insurance must be paid, and there can be no apportionment." *Wilson and Co. v. Hartford Fire Ins. Co.*, 300 Mo. 1, 254 S.W. 266 (1923).   A blanket policy is also defined as "one which insures property collectively without providing in the event of a loss for a distribution of the insurance to each item." *Id.*   Other jurisdictions recognize similar definitions. *See Indiana Ins. Co. v. Pana Cmty. Unit Sch. Dist. No. 8*, 173 F.Supp.2d 835 (C.D.Ill. 2001) ("[B]lanket coverage represents an upper limit of liability calculated by adding the values of property at certain locations.  That blanket limit applies to a loss at any location covered by the blanket."); *Forrest v. Northland Cas. Co.*, 213 F. Supp. 2d 1023 (W.D. Ark. 2002) (a blanket policy is "written upon a risk as a whole, embracing whatever articles or items are included therein, often changing in

---

[1] The parties do not dispute Missouri law applies in this diversity case.

nature, as compared to a specific policy, which allocates the amount of risk in stated values upon the several items embraced in the coverage.") (*citing* Appleman, Ins. Law & Practice, § 3912).

A blanket *limit*, however, does not equate to the ***amount of loss***, as Plaintiff appears to suggest.  Blanket insurance affords a single, maximum amount of coverage for a number of properties rather than imposing a separate limit of coverage for every individual piece of property insured.  *See Forrest*, 213 F. Supp. 2d 1023.  For example, in *Trico Servs. Corp. v. Houston Gen. Ins. Co.*, 404 So.2d 1313 (La. Ct. App. 1982), a Louisiana court addressed the amount of loss due under a blanket policy for a tornado causing damage to some but not all buildings in an insured storage complex.  The policy "was a blanket-type policy in that it provided the total amount of coverage on eleven separate buildings." *Id*.  A tornado destroyed five of the eleven buildings; the remaining buildings were damaged but repairable. *Id*.  On appeal, the insured argued in part that the trial court erred in applying the policy's replacement cost endorsement for the evaluation of losses to the individual buildings.  The appellate court affirmed the trial court's determination of loss, as "the loss shall be the actual cash value of each building destroyed" when such buildings are covered by a blanket policy. *Id*. at 1320.

As the Blanket Coverage Endorsement indicates, the blanket limit of $31,773,600.00 is "***the most*** [AFMIC] will pay for loss or damage in any one occurrence." (emphasis added).  Here, the loss amount calculation is determined by subsection E. Property Loss Conditions.  Pertinent to Plaintiff's claim for damages to Buildings 6, 7, and 9, paragraph 5. to the Property Loss Conditions, labeled "Loss Payment" outlines the amount AFMIC is obligated to pay in the event of loss or damage covered by the Policy.[2]  Significantly, the Blanket Coverage Endorsement does not amend the Policy's Loss Payment provisions.  Plaintiff's reliance on the

---

[2] Endorsements amending the Loss Payment paragraph are not relevant to the question raised in AFMIC's motion at bar.

fact the Policy covering Plaintiff's apartment complex is a blanket policy is misplaced, and Plaintiff is not automatically entitled to $31,773,600.00 in the event of a covered loss.

### 2. Missouri's Valued Policy Statutes do not apply to Plaintiff's loss

Throughout the Petition, Plaintiff contends the subject fire caused a "total loss" within the meaning of Missouri's "Valued Policy Statutes," §§ 379.140 and 379.160.3. *See Petition*, ¶¶ 15, 17, 21. As an initial matter, "[v]alued policies can be created under either contract principles or statutory law." *Polytech, Inc. v. Affiliated FM Ins. Co.,* 21 F.3d 271, 273 (8th Cir. 1994) (*citing Huth v. Gen. Accident & Life Assur. Corp., Ltd.,* 536 S.W.2d 177, 181 (Mo. Ct. App. 1976)). Plaintiff contends the Policy is a "valued policy" by operation of Missouri statutory law and is therefore entitled to the full limits of the Policy due to the claimed "total loss" of Building 7.

Whether Plaintiff is entitled to the full Limits of Insurance pursuant to Missouri's Valued Policy Statute, RSMo. § 379.140, as Plaintiff claims, depends on whether Plaintiff's claimed "total loss" to one[3] of Plaintiff's 32 apartment buildings qualifies as a "total loss" within the meaning of the statute. This statute provides as follows:

> In all suits brought upon policies of insurance against loss or damage by fire hereafter issued or renewed, the defendant shall not be permitted to deny that the property insured thereby was worth at the time of the issuing of the policy the full amount insured therein on said property; **and in case of total loss of the property insured, the measure of damage shall be the amount for which the same was insured, less whatever depreciation in value, below the amount for which the property is insured, the property may have sustained between the time of issuing the policy and the time of the loss**, and the burden of proving such depreciation shall be upon the defendant; and in case of partial loss, the measure of damage shall be that portion of the value of the whole property insured, ascertained in the manner prescribed in this chapter, which the part injured or destroyed bears to the whole property insured.

(emphasis added). The related statute, RSMo. § 379.160.3, provides in relevant part:

> ….; provided further, that in all suits brought upon policies of insurance against loss or damage by fire hereafter issued or renewed, **the defendant shall not be**

---

[3] Plaintiff claims a total loss to Building 7. Plaintiff also claims partial losses to Buildings 6 and 9.

> *permitted to deny that the property insured thereby was worth at the time of the*
> *issuing of the policy the full amount insured therein on said property covering*
> *both real and personal property*; and provided further, that nothing in this section
> shall be construed to repeal or change the provisions of section 379.140.

(emphasis added).  Section 379.140 RSMo. "establishes as the measure of damages *for a total*

*loss of real property* the face value of the policy less the amount the property depreciates

between the time the policy is issued and the time of the casualty."  *Wells v. Missouri Prop. Ins.*

*Placement Facility*, 653 S.W.2d 207, 210 (Mo. banc 1983) (emphasis added).  "*The valued*

*policy statute does not apply, however, unless the loss is a total loss*."  *Harris v. Am. Modern*

*Home Ins. Co.*, 571 F. Supp. 2d 1066, at 1080 (E.D. Mo. 2008) (emphasis added) (*citing JAM*

*Inc. v. Nautilus Ins. Co.*, 128 S.W.3d 879, 893 (Mo. App. W.D. 2004)). The purpose of these

statutes is to prevent over- insurance, i.e., the practice of insurers "taking reckless risks in order

to obtain large premiums" and encouraging "insurers to investigate the value of the property

when coverage is purchased."  *Cmty. Title Co. v. Safeco Ins. Co. of Am.,* 795 S.W.2d 453, 463

(Mo. App. E.D. 1990) (interpreting RSMo. § 379.140).

"In a valued policy, the value of the property insured is *agreed* upon by the parties."  *Id.*

"If a total loss of the insured property occurs, then the insurance company pays the stipulated

value; the actual value is irrelevant."  *Polytech, Inc.*, 21 F.3d at 273 (*quoting Clark v. Aetna Cas.*

*& Sur. Co.,* 778 F.2d 242, 247 (5th Cir. 1985)).  "Valued policies are said to precisely fix the

risks and are analogous to liquidated damages provisions in other contracts" and *"are*

*distinguished from open policies which leave the final amount to be paid uncertain***."**  *Id.*

(emphasis added); *Springfield Crusher, Inc. v. Transcon. Ins. Co.,* 372 F.2d 125 (3rd Cir. 1967)

(a policy was "a conventional open policy which, by its express terms requires proof of the

actual cash value of the insured property at the time of loss or damage.").

### 3. Persuasive case law supports rejection of the Missouri Valued Policy Statutes to Plaintiff's loss

The issue, then, is whether destruction to a single building of multiple insured buildings qualifies as a "total loss" for purposes of Missouri's Valued Policy Statutes.  Though a court applying Missouri law has yet to face this question, the Eighth Circuit addressed a remarkably similar issue to the one at bar concerning Kansas' Valued Policy Law in *State Auto Prop. & Cas. Ins. Co. v. Boardwalk Apartments, L.C.*, 572 F.3d 511 (8th Cir. 2009).

In *Boardwalk Apartments*, the insurer, State Auto, issued a policy to Boardwalk Apartments ("Boardwalk"), which owned a complex with eight apartment buildings and a storage building.  *Id*. at 513.  A fire destroyed Building 1 of the apartment complex and partially damaged Building 4 (a storage building).  *Id*.  The policy provided an aggregate coverage limit of $7,207,200 with a 4 percent inflation guard.  *Id*. at 514.  State Auto sought a declaration that its maximum exposure to loss for Building 1 was $2,240,124.17 (the amount listed in a Statement of Value attached to the application for insurance, plus demolition and cleanup costs). *Id*.  Boardwalk, however, claimed it was entitled to the coverage limit for the blanket policy, $7.3 million.  *Id*.  The parties did not dispute that the policy was a blanket policy with a $7.3 million limit; however, they disagreed whether the Kansas Valued Policy Law applied.  *Id*.

Boardwalk claimed it was entitled to the $7.3 million limit because the Kansas Valued Policy Law provides that for any "wholly destroyed property," the amount of insurance written in the policy shall be taken conclusively to be the value of the property and the amount of loss. *Id*. at 516.  The court acknowledged "the Kansas Valued Policy Law has no express exception for blanket policies."  *Id*.  However, the Court rejected the law's application because "***all of the buildings in the complex must be wholly destroyed before the Valued Policy Law applies***."  *Id*. (emphasis added) (*citing Kinzer v. Nat'l Mut. Ins. Co.*, 88 Kan. 93, 127 P. 762, 763 (1912)

(holding where one building in a group of buildings is destroyed, the Kansas Valued Policy does not apply)).  The Eighth Circuit in *Boardwalk Apartments* additionally held that State Auto's liability was not limited to $2.1 million because the policy did not reference or incorporate the Statement of Values relied on by State Auto.  *Id.*  Finally, because the Kansas Valued Policy Law did not apply, the Court applied certain provisions of the policy's Loss Conditions to determine the amount State Auto owed Boardwalk for the subject loss.  *Id.* at 517.

Further, a careful analysis of the Policy's provisions demonstrates it is an "open policy" and not a "valued policy".  *See Huth v. Gen. Acc. & Life Assur. Corp.*, 536 S.W.2d 177, 181 (Mo. Ct. App. 1976) ("If there is anything in the policy which clearly indicates an intention on the part of the insurer to value the risk and loss, in whatever words expressed, the policy is valued.").  Thus, Plaintiff's covered loss must be determined by applying the Policy's Loss Payments terms to calculate the amount owed by AFMIC resulting from fire damage to Buildings 6, 7, and 9, which did not damage the other 29 buildings in the Norstead Walk complex.

Though there is a lack of case law applying Missouri law to the issue of whether a Businessowners policy like the one at bar is an "open policy" or a "valued policy", the case of *Sayer Bros., Inc. v. St. Paul Fire & Marine Ins. Co.*, 150 F.Supp.2d 907 (W.Va. 2001), supports AFMIC's position.  In *Sayer Bros.*, Ames Department Stores, Inc. ("Ames") leased a commercial building from Sayers Bros. in Wilkinson, West Virginia.  *Id.* at 909.  The lease required Ames to insure the building against loss or damage by fire.  *Id.*  Ames provided fire insurance by including the building and its contents under Ames' "all-risk policy" issued by St. Paul Fire & Marine Ins. Co. ("St. Paul").  *Id.*  The all-risk policy provided coverage for hundreds of Ames' stores; Sayer Bros. was added as an additional insured to the policy.  *Id.*  The Sayer Bros.

building in Wilkinson was destroyed by fire.  *Id*.  Sayer Bros. made a claim under the St. Paul all-risk policy for $35 million, the single occurrence limit of liability.  *Id*.

Sayers Bros. relied on West Virginia's Valued Policy Law to argue its building was totally destroyed by fire entitling it to $35 million, the entire amount of insurance stated in the policy.  *Id*.  The court rejected Sayers Bros.' argument and held the policy was an "open policy" rather than a "valued policy", because "[n]o value is provided for the Sayer Bros. building as liquidated damages" and it "values every building covered at replacement cost or, if not replaced, actual cash value."  *Id*. at 912.  It noted the "West Virginia Court has never applied the valued policy law to an open insurance policy or to a policy like the St. Paul all-risk policy, covering multiple buildings for losses to real property, personal property, and several types of business income."  *Id*. at 913.

The *Sayers Bros*. court explained "***[a]n amount stated in the policy as the amount of the insurance or the maximum amount of recovery does not, in itself, constitute or make the policy a valued one***, so as to entitle the insured to recover the specified amount in case of an actual or constructive loss."  *Id*.  (emphasis added) (*quoting* 12 Couch on Ins. § 175:98).  It further stated "[t]he amount of an open policy of insurance...is no evidence of the value of the property or the extent of the loss."  *Id*. at 913-14 (*quoting Borden v. Gen. Ins. Co. of Am.,* 157 Neb. 98, 59 N.W.2d 141, 147 (1953)).  The *Sayer Bros*. court concluded, "[c]ommon sense and a straightforward reading of the St. Paul policy demonstrate that thirty-five million dollars was never intended by the parties as liquidated damages on the total loss of the single Sayer Bros. building in Wilkinson, West Virginia," citing the relationship between the insured property's value, the premium paid, and the valued policy statute's purpose in support.  *Id*. at 914. Ultimately, the court predicted the West Virginia Supreme Court of Appeals would not require

the forced application of the valued policy law to what was "clearly an open insurance policy, *nor hold an insurer liable for its thirty-five million dollar maximum risk for one occurrence as liquidated damages for the total loss by fire of a single store building with a total reconstruction cost of approximately seven and a half million dollars*." *Id.* at 915 (emphasis added).  The Court construed the policy to provide valuation at the time of loss "at replacement cost and, if not so replaced, at actual cash value on date of loss" per the policy's terms and conditions. *Id.*; s*ee also Billmayer v. Farmers Union Prop. & Cas. Co.*, 146 Mont. 38 (1965) (an "open policy" is "one in which the amount of liability is left open to be determined according to the actual loss, either by agreement of the parties, or on proof in compliance with its terms or with the rules of evidence.").

Though not directly addressing valued policy law, the case of *Forrest v. Northland Cas. Co.*, 213 F.Supp.2d 1023 (W.D. Ark. 2002) (applying Arkansas law), similarly explains the role of other policy provisions to determine the amount of loss under a blanket policy when one of multiple insured buildings is destroyed.  In *Forrest*, the policy covered three poultry houses and equipment. *Id.* at 1024.  Though the insureds submitted an application for insurance specifying the separate value of each house and its equipment, the policy itself did not. It instead set "an overall policy limit of $370,000 for 'blanket buildings and equipment,'" and thus was a "blanket policy." *Id.*  The policy in *Forrest* provided "that the replacement cost for any loss or damage is not recoverable unless the property is actually repaired or replaced as soon as reasonably possible after the loss or damage" and "[i]f this is not done, then only the actual cash value, which takes depreciation into account, is recoverable." *Id.*

The insureds in *Forrest* submitted a claim arising out of the loss of one of the three poultry houses after it was destroyed by fire.  They sought the value for the destroyed poultry

11

house listed in its application of insurance rather than the actual cash value calculated by the insurer.  The insurer was only willing to pay the actual cash value because the insureds had not rebuilt the poultry house as the policy required before there could be a replacement cost recovery.  The insureds argued the application was part of the insurance contract and, pursuant to the Arkansas valued policy law, they were entitled to the full value of the destroyed poultry house.  *Id*.  Unlike Plaintiff in this case, the insureds in *Forrest* did not seek the full policy limit ($370,000), but sought the value of the destroyed poultry house listed in the application.  The Court agreed with the insurer's calculation, concluding the insurer properly paid the insured the actual cash value of the destroyed house pursuant to the policy's terms, when the insured did not rebuild the house entitling it to recover the replacement cost value.  *Id*. at 1025.  The Court additionally rejected the insured's position that the valued policy law applied, as the application was not part of the policy and there was no agreed-to value for the single poultry house destroyed entitling it to the full value.  *Id*.

As in *Sayer Bros.* and *Forrest*, Plaintiff cannot employ the blanket limit of insurance in the Policy as a liquidated damages provision as a result of Building 7's destruction.  Because the Policy is "open", provisions governing the loss amount (particularly the Loss Payments provision, as amended by endorsements), must be used to calculate Plaintiff's loss amount.

### C.  Public policy considerations support AFMIC's position

The law is not intended to bring about absurd results.  *See State ex rel. ISC Fin. Corp. v. Kinder*, 684 S.W.2d 910, 914 (Mo. App. W.D. 1985) ("It is a sound principle of statutory construction that a statute is not to be interpreted to produce an absurd result.").  That principle applies equally in the insurance law context.  *See Blair By Snider v. Perry Cty. Mut. Ins. Co.*, 118 S.W.3d 605, 606 (Mo. 2003) (when interpreting insurance policies, "[t]he more probable and

reasonable of two available constructions should be utilized to the exclusion of one which produces a 'redundant, illusory, absurd, and therefore unreasonable' result.").   Plaintiff's proposal results in a plainly absurd outcome, and for that reason alone it should be rejected.

According to Plaintiff, it would receive the same amount of money for the total loss of Building 7 – with no need for any proof by Plaintiff of Building 7's pre-loss value – as if every building in the 32-building complex was destroyed by fire.  Such a result is illogical and an unreasonable application of the Missouri Valued Policy Statutes.  As it now stands, Plaintiff claims Buildings 6, 7, and 9 were damaged by a fire, but because Building 7 was a "total loss", Plaintiff should automatically recover the blanket limit for that loss alone, with no recovery for Buildings 6 and 9 despite Plaintiff's allegations of losses to those structures.  No set of facts exist under which such a specious result would be considered reasonable.  Of course, Plaintiff has every incentive to rely on its untenable position, as a massive windfall naturally follows.  Buildings 6, 7, and 9 do not have a combined value of $31,773,600, a fact known to Plaintiff.  Plaintiff would make this same argument if, under the same set of facts, it had agreed to a $2,000,000 blanket limit.  Plaintiff would likely then contend AFMIC was liable to pay Plaintiff for the significant amount by which its apartment complex had been under-insured.

The Missouri Valued Policy Statutes' purpose is not to create windfalls for insureds and associated moral hazards.  Rather, the statutes are designed "to protect the insured by relieving [the insured] of the burden of proving the full value of [the insured's] property after total destruction, and to prevent insurer's from receiving premiums on over-valuations but thereafter repudiating their contracts when it becomes to their interest to do so."  12 Couch on Ins. 3d. § 175:103; *Stahlberg v. Travelers Indem. Co.*, 568 S.W.2d 79, n.3 (Mo. Ct. App. 1978) (describing the purposes of Missouri's Valued Policy Statutes).  The harms for which valued policies are

designed to prevent are not present in this case.  Nor would this Court further such policy interests by adopting Plaintiff's unsupported theory, which would only serve to profit Plaintiff. They are also designed to prevent moral hazards, as explained in *Atlas Lubricant Corp. v. Fed. Ins. Co. of New Jersey*, 293 So.2d 550, 556 (La. Ct. App. 1974):

> It follows that failure of an insurer to inspect a risk for valuation purposes can lead to over-insurance and can produce a moral hazard as well.  In other words, if a building is insured for more than its actual worth, an insured might be indifferent about loss prevention.  This situation might even give an insured an incentive to intentionally cause damage to his structure.

*Id*. (discussing Louisiana Valued Policy Law); *see also Chauvin v. State Farm Fire & Cas. Co.*, 495 F.3d 232, 239 (5th Cir. 2010) (adoption of the valued policy law "discourage[s] intentional destruction of property by insureds when they are permitted to over insure their property.").

Courts routinely recognize the language of Valued Policies Laws must be interpreted pursuant to rules of statutory construction when determining whether they apply to a loss such as Plaintiff's.  *See id*. at 237.  Missouri's statutory interpretation rules provide "[i]f the intent of the legislature is clear and unambiguous, by giving the language used in the statute its plain and ordinary meaning, then we are bound by that intent and cannot resort to any statutory construction in interpreting the statute."  *Goerlitz v. City of Maryville*, 333 S.W.3d 450, 455 (Mo. 2011).  Here, the Missouri's Valued Policy Statutes are clear and unambiguous and therefore require no statutory construction.

Section 370.140 of Missouri's Valued Policy Statute provides that "[i]n case of ***total loss of the property insured*** the measure of damages shall be the amount for which the same was insured, less whatever depreciation of value, below the amount for which the property is insured, the property may have sustained between the time of insuring the policy and the time of loss…." (emphasis added).  Per the Policy's Declarations, AFMIC insured a 32-building complex, and

14

thus a "total loss of the property insured" means a total loss by fire to every building of the 32-building complex.  It is the only reasonable interpretation.  To obtain the absurd result suggested by Plaintiff, the relevant language in the statute would need to read "in case of total loss of **a portion** of the property insured…."  The statute does not so read.  Thus, the total loss to Building 7 does not constitute a total loss within the meaning of § 379.140.  Plaintiff's tortured statutory interpretation creates the very moral hazard Missouri's Valued Policy Statutes is intended to prevent, leading to insureds being "indifferent about loss prevention" and potentially creating "an incentive to intentionally cause damage to [its] structure."  *See Atlas Lubricant*, 293 So.2d at 556.  AFMIC's reasonable reading of Missouri's Valued Policy Statutes does not render the statutes meaningless, but promotes their purpose.  Furthermore, there is no evidence AFMIC was taking on a "reckless risk…to obtain large premiums" only to later deny Building 7 had "the valuation stated in the policy."  The Policy is devoid of any "valuation stated in the policy" for Building 7.  No rational reason exists for this Court to find the Missouri Valued Policy Statutes apply to enable Plaintiff to recover $31,773,600.00 for the solitary loss of Building 7.

## III.   CONCLUSION

The reasonable interpretation of the Policy's unambiguous language and pertinent case law demonstrate as a matter of law that the Missouri Valued Policy Statutes do not apply to Plaintiff's claim.  Plaintiff, thus, is not entitled to the full $31,773,600.00 by the destruction of Building 7.  The Missouri Valued Policy Statutes' purpose is not designed to provide the windfall Plaintiff seeks.  As such, Plaintiff cannot support its claims based on such position.  AFMIC is entitled to the entry of partial summary judgment against Plaintiff on this issue.

7575501.1

SANDBERG PHOENIX & von GONTARD P.C.

By:   */s/ Anthony L. Martin*
      Anthony L. Martin, #34521MO
      Meghan E. Lewis, #62177MO
      600 Washington Avenue - 15th Floor
      St. Louis, MO  63101-1313
      314-231-3332
      314-241-7604 (Fax)
      amartin@sandbergphoenix.com
      mlewis@sandbergphoenix.com

      ***Attorneys for Defendant,***
      ***American Family Mutual Insurance Company***


## Certificate of Service

I hereby certify that on the 2nd day of September, 2016 the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

Mr. Nicholas A. Franke
nfranke@frankelawfirm.com


                              */s/ Anthony L. Martin*