IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| *NORWOOD-REDFIELD APARTMENTS LIMITED PARTNERSHIP,*<br><br>       Plaintiff,<br><br>v.<br><br>*AMERICAN FAMILY MUTUAL INSURANCE COMPANY,*<br><br>       Defendant. | Cause No. 4:16-cv-00639-AGF |

**DEFENDANT AMERICAN FAMILY MUTUAL INSURANCE COMPANY'S
MEMORANDUM OF LAW IN SUPPORT OF ITS
SECOND MOTION FOR PARTIAL SUMMARY JUDGMENT**

COMES NOW Defendant American Family Mutual Insurance Company ("AFMIC"), by and through its counsel of record, Sandberg Phoenix & von Gontard P.C., pursuant to Federal Rule of Civil Procedure 56(a) and Local Rule 7 – 4.01, submits its Memorandum of Law in support of its Second Motion for Partial Summary Judgment, and states as follows:

**I.     INTRODUCTION**

Plaintiff Norwood-Redfield Apartments Limited Partnership ("Plaintiff") asserts against AFMIC claims for breach of contract (Count I) and vexatious refusal to pay (Count II) for amounts purportedly due under a Businessowners Policy AFMIC issued to Plaintiff ("Policy") in connection with a December 18, 2010 fire damaging three buildings in Plaintiff's apartment complex ("Fire"). As a result of the Fire, AFMIC made multiple payments to Plaintiff and third-party contractors totaling $2,897,896.90. Plaintiff now seeks to recover from AFMIC as claimed damages (1) an "extraordinary" construction management fee allegedly incurred by its property management company, Baumann Property Company, Inc., and (2) "supervisory and labor fees"

8844618.1

invoiced by Denny Hornbeck Construction Company, Inc. allegedly related to post-Fire repair and construction.

The management fee and supervisory and labor fees do not constitute covered losses under the Policy, nor are they recoverable as consequential damages resulting from AFMIC's alleged breach of the Policy. Thus, AFMIC is entitled to summary judgment in its favor on Plaintiff's claim for breach of contract premised on AFMIC's failure to pay such fees. Furthermore, summary judgment on Plaintiff's claim for statutory vexatious refusal penalties is warranted because AFMIC did not breach any duty under the Policy and there is no evidence its refusal to pay Plaintiff's claim for fees was willful and without reasonable cause or excuse.

Whether the damages sought by Plaintiff are covered by the Policy presents a question of law based upon undisputed material facts. The issue of Plaintiff's ability to recover on its claim for vexatious refusal to pay rests upon undisputed facts and may be determined as a matter of law. These questions, therefore, are ripe for disposition by summary judgment.

## II.  STANDARD FOR MOTION FOR SUMMARY JUDGMENT

Pursuant to Federal Rule of Civil Procedure 56(c), a court may grant a motion for summary judgment if all of the information before the court shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322, (1986). Material facts are those "that might affect the outcome of the suit under the governing law," and a genuine material fact is one "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Once the moving party has met its burden, the non-moving party may not rest on the allegations of his pleadings but "must set forth specific facts," by affidavit or other evidence, showing a genuine issue of material fact exists.

*United of Omaha Life Ins. Co. v. Honea*, 458 F.3d 788, 791 (8th Cir. 2006) (quoting Fed. R. Civ. P. 56(e)).

If the nonmoving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case, ... there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322-23.  Rule 56, thus, "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*. at 322.  "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to 'secure the just, speedy and inexpensive determination of every action.'" *Id.* at 327.

### III.     ARGUMENT

#### A.  Plaintiff's Claim for Fees Is Not Covered by the Policy.

The parties agree this dispute is governed by Missouri law.  In Missouri, "insurance policies are contracts, and the rules of contract construction apply." *Arbeitman v. Monumental Life Insurance Co.,* 878 S.W.2d 915, 916 (Mo. App. E.D. 1994).  As with any other contract, the interpretation of an insurance contract is generally a question of law, particularly in reference to the question of coverage. *H.K. Porter Co. v. Transit Cas. Co.,* 215 S.W.3d 134, 140–41 (Mo. App. W.D. 2006).  In interpreting an insurance policy, courts must give words "their plain meaning, consistent with the reasonable expectations, objectives, and intent of the parties." *Standard Artificial Limb, Inc. v. Allianz Ins. Co.,* 895 S.W.2d 205, 209 (Mo. App. E.D. 1995) (internal citations omitted).  Summary judgment is an appropriate judicial tool in a breach of

3

8844618.1

contract case where the contract is clear and unambiguous in its construction.  *West v. Jacobs,* 790 S.W.2d 475, 480 (Mo. App. W.D. 1990).

Plaintiff's claim for breach of the Policy is limited to the policy benefit itself based on the law of contract, and, when applicable, the enhancements provided by Missouri's vexatious refusal statute, as more fully discussed in Section III.C., *infra*.  The loss of the benefit at issue is coverage under the Businessowners Coverage Policy issued to Plaintiff.  Plaintiff premises the remaining part of its claim for breach of contract[1] (Count I) on AFMIC's failure to pay "supervisory and labor fees" allegedly incurred to Denny Hornbeck Construction Company, Inc. (hereinafter "DHC") and a "construction management fee" paid to its property manager, Baumann Property Company, Inc. ("BPC").  (*AFMIC's Statement of Uncontroverted Material Facts in Support of Second Motion for Summary Judgment*,[2] ¶¶ 14, 20).  AFMIC denied Plaintiff's requests for payment of these fees because such fees are not covered under the Policy. (AFMIC SOF, ¶ 24).

Plaintiff's claim for a management fee paid to BPC for BPC's management of the repair and construction efforts to Plaintiff's apartment complex after the Fire (hereinafter "BPC Construction Management Fee"), falls outside of the Policy's coverage for direct physical loss or damage to "Covered Property."  (AFMIC SOF, ¶¶ 14, 15, 17).  Similarly, Plaintiff's claim for "supervisory and labor" fees totaling $199,264.80, submitted in DHC's February 22, 2013 invoice to BPC (hereinafter "DHC Supervisory/Labor Fees"), does not qualify as a covered loss. (AFMIC SOF, ¶¶ 20, 21).

---

[1] On May 18, 2017, the Court granted AFMIC's Motion for Partial Summary Judgment on Plaintiff's claim for breach of contract arising out of AFMIC's failure to pay the Policy's full $31,773,600 limits due to the claimed "total loss" to one of Plaintiff's 32 buildings.  [Doc. 44].
[2] Hereinafter referred to as "AFMIC SOF."

4

8844618.1

Missouri law provides that "[w]hen an insurance company wrongfully refuses payment of a claim to its insured, the company has simply breached its contract." *Overcast v. Billings Mut. Ins. Co.,* 11 S.W.3d 62, 67 (Mo. banc 2000). "***Damages for breach of contract are limited to the loss of the benefit itself***." *Id*. (emphasis added). "The damage amount should place the insured in the position he would have been in had the contract been performed." *Id*. (citing *Boten v. Brecklein,* 452 S.W.2d 86 (Mo. 1970)).; *see also Wood v. Foremost Ins. Co.,* 477 F.3d 1027, 1029 (8th Cir. 2007) (in Missouri, "recovery by the insured against the insurance company for the policy benefit...is limited to that provided by the law of contract plus, if section 375.420 applies, the enhancements provided by the statute."). Thus, "the law of contract, as applied to insurance policies, limits damages to those that are the probable result of the breach, based on the facts of the case." *Id*. at 1030 (8th Cir. 2007).

> 1. **The BPC Construction Management Fee and DHC Supervisory/Labor Fees do not constitute "direct physical loss of or damage to Covered Property."**

First, neither the BPC Construction Management Fee nor the DHC Supervisory/Labor Fees (collectively, "Fees") constitute "direct physical loss of or damage to Covered Property" within the meaning of the Policy's SECTION I – PROPERTY Insuring Agreement. This section provides that AFMIC "will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." (AFMIC SOF, ¶ 9, Section I.A.). The Policy defines "Covered Property" to include "Buildings," which means "the buildings and structures at the premises described in the Declarations." (AFMIC SOF, ¶ 9, Section I.A.1.a.).

Employing the plain language of this provision, the Fees do not qualify as a ***direct physical loss of or damage to*** any of the buildings insured under the Policy. *See, e.g., Cincinnati*

5

*Ins. Co. v. Meramec Valley Bank*, 259 F. Supp. 2d 922, 928 (E.D. Mo. 2003) (finding a fraud judgment did not constitute "direct physical loss of or damage to a building or related personal property."); *Indian Harbor Ins. Co. v. Clarinet, LLC*, No. 4:07CV581MLM, 2009 WL 398492, at *11 (E.D. Mo. Feb. 17, 2009) ("The term 'direct' as used in the policy relates to causal connection and is to be interpreted as the immediate or proximate as distinguished from the remote cause."); MERRIAM-WEBSTER DICTIONARY, "physical" ("a: having material existence: perceptible especially through the senses and subject to the laws of nature; b: of or relating to material things."). Rather, at best, the Fees are in the nature of ***intangible losses*** indirectly related to, but not directly caused, by the Fire. Furthermore, there is no evidence Plaintiff paid, or ever intended to pay, the DHC Supervisory/Labor Fees. (AFMIC SOF, ¶¶ 25-27, 30). Curiously, John Brawley, the general contractor's construction superintendent, testified he prepared and issued the invoice after conferring with his boss. Both of them hoped, but neither expected, the invoice would be paid. Because, as Denny Hornbeck and John Brawley anticipated, AFMIC did not pay the invoice when submitted, the DHC has not pursued collection of that invoice issued nearly four and a half years ago. (AFMIC SOF, ¶¶ 30).

> ### 2. *The BPC Construction Management Fee and DHC Supervisory/Labor Fees do not qualify as covered "Business Income."*

Second, the BPC Construction Management Fee and DHC Supervisory/Labor Fees fall outside the scope of any additional coverage under SECTION I – PROPERTY for "Business Income." While the Policy affords coverage, in relevant part, for three categories of "Business Income," *i.e.*, "Business Income," "Extended Business Income," and "Extra Expense," Plaintiff's claim for fees does not qualify under the definition of any covered category. (AFMIC SOF, ¶ 9, Section I.A.5.f. and g.).

8844618.1

For example, under Section I.A.5.f.1. of the Policy, AFMIC agrees to pay for "Net Income (Net Profit or Loss before income taxes) that would have been earned or incurred if no physical loss or damage had occurred" and "[c]ontinuing normal operating expenses incurred, including payroll."  (AFMIC SOF, ¶ 9).  None of the Fees Plaintiff seeks to recover from AFMIC can reasonably be considered earned income absent the Fire's occurrence.  Nor can the Fees otherwise mean "continuing normal operating expenses" akin to payroll expenses or any other "continuing *normal operating expenses*." (emphasis added).

Significantly, the source of the BPC Construction Management Fee is a contract between Plaintiff and BPC labeled "Property Management Agreement."  (AFMIC SOF, ¶¶ 11-16).  The Property Management Agreement describes the BPC Construction Management Fee as a means for compensating BPC for "*extraordinary* repairs, reconstruction or rehabilitation" and "not customarily a part of the usual services" of BPC.  (AFMIC SOF, ¶ 11).  Thus, Plaintiff's own description of the BPC Construction Management Fee defeats any argument that the fee qualifies as covered "Business Income."  The DHC Supervisory/Labor Fees, described as fees for "supervision and general labors" considered and invoiced to Plaintiff near the end of DHC's repair and construction to the damaged apartment buildings, are outside the Policy's definition of "Business Income."  (AFMIC SOF, ¶ 23).

Additionally, to be covered under this subsection of the Policy, the loss of "Business Income" must be sustained "within 12 consecutive months after the date of direct physical loss or damage."  (AFMIC SOF, ¶ 9, Section I.A.5.f.(1)(b)).  The BPC Construction Management Fee was incurred and paid by Plaintiff to BPC over a course of nearly three years, with the first payment commencing nearly *33 months after the Fire*.  (AFMIC SOF, ¶ 18).  Similarly, the DHC Supervisory/Labor Fee was not invoiced until *more than 24 months after the Fire*.

7

(AFMIC SOF, ¶¶ 21-23). Plaintiff, thus, did not sustain the Fees within the time required by the Policy to be considered covered losses. And because the Fees do not fall within the definition of "Business Income," they do not qualify as covered "Extended Business Income" under Section I.A.5.f.(2) of the Policy. (AFMIC SOF, ¶ 9).

Finally, the Fees do not satisfy the definition of "Extra Expense" to be afforded coverage under Section I.A.5.g. of the Policy, which states:

> To avoid or minimize the suspension of business and to continue 'operations' at the described premises or replacement premises, or to repair or replace the property to the extent it reduces the amount of loss otherwise payable, and is ***incurred within 12 consecutive months after the date of direct physical loss or damage***.

(AFMIC SOF, ¶ 9) (emphasis added). As noted above, both the BPC Construction Management Fee and the DHC Supervisory/Labor Fees were "incurred" well-after twelve months following the Fire in December 2010. (AFMIC SOF, ¶¶ 18, 21-23). Again, the BPC Construction Management Fee was "pre-negotiated" by BPC and Plaintiff *in 1988* to compensate BPC for major capital repairs or replacements and *paid by Plaintiff from 2013 to 201*6. (AFMIC SOF, ¶¶ 11-13, 16-17).

Because the Fees are not a covered loss under the Policy, as a matter of law AFMIC cannot have breached the Policy by failing to the pay them. Accordingly, Plaintiff will never be able to prove AFMIC breached the insurance policy contract, an essential element to Plaintiff's claim in Count I of the Petition. *See Truman Bank v. New Hampshire Ins. Co.*, 370 S.W.3d 675, 676 (Mo. App. E.D. 2012) (in breach of contract action, plaintiff must establish "1) the existence and terms of a contract; 2) the plaintiff's performance or tender of performance pursuant to the contract; 3) the defendant's breach of the contract; and 4) damages suffered by the plaintiff."). As such, AFMIC is entitled to summary judgment on Plaintiff's claim for breach of contract.

8

### B.  Plaintiff's Claim for Fees Is Not Recoverable as Consequential Damages.

To the extent Plaintiff seeks to recover the Fees from AFMIC under a theory they constitute consequential damages to AFMIC's alleged breach of the Policy, Plaintiff is barred from their recovery because (1) AFMIC did not breach the Policy, and (2) even if Plaintiff could prove a breach (which it cannot), the Fees were not foreseeable damages.

The Fees in question do not fall within with scope of coverage available under SECTION I of the Policy for the reasons set forth in Section III.A., *supra*.  AFMIC, therefore, cannot be liable for breach of contract and Plaintiff cannot recover any damages, including damages in the form of Fees.  *See Truman Bank*, 370 S.W.3d at 676.

Even assuming *arguendo* Plaintiff could establish AFMIC breached a duty owed to Plaintiff under the Policy, the Fees were unforeseeable and not proximately flowing from any breach by AFMIC.  Generally, the measure of damages for breach of contract is "compensation [which] should be equal to the injuries subject to the condition that the damages be confined to those naturally and proximately resulting from the breach and be not uncertain or speculative." *Lamb v. Amalgamated Labor Life Ins.*, 602 F.2d 155, 159 (8th Cir. 1979) (quoting *Mayfield v. George O. Richardson Mach. Co.*, 208 Mo. App. 206, 231 S.W. 288 (1921)).  Recovery for breach of contract is limited "to those damages which could reasonably be supposed to have been within the contemplation of the parties at the time they entered into the contract." *Wells v. Holiday Inns, Inc.*, 522 F. Supp. 1023, 1027–28 (W.D. Mo. 1981) (applying Missouri law).  This rule precludes damages "not known to the party charged with breach." *Id.*

As to the BPC Construction Management Fee, such fee derived from a contractual relationship between BPC and Plaintiff created ***almost thirty years ago***.  (AFMIC SOF, ¶¶ 11-13, 16).  AFMIC was not made aware of the existence of the fee, its source, or Plaintiff's claim for

9

recovery of that sum *until discovery* in this case.  (AFMIC SOF, ¶ 19).[3]  It was only during the Rule 30(b)(6) deposition of Plaintiff that AFMIC was able to discover what Plaintiff meant by a vague entry in a chart appearing in a court-ordered interrogatory answer.  (AFMIC SOF, ¶¶ 17, 19).  The BPC Construction Management Fee represents claimed damages which could not reasonably have been within the contemplation of AFMIC at the time it issued its Policy to Plaintiff for the September 11, 2010 to September 11, 2011 policy period.  Thus, Plaintiff should not be liable for such a remote claim for damages relying on the existence of an undisclosed contractual obligation between Plaintiff and a third-party unknown and unforeseeable to AFMIC.

Likewise, the DHC Supervisory/Labor Fees were not foreseeable to AFMIC at the time it issued the Policy.  The fee – represented in a single invoice dated more than two years after the Fire – was not known to or otherwise contemplated by AFMIC.  (AFMIC SOF, ¶¶ 21-23, 28, 29).  Particularly important, there is no evidence the DHC Supervisory/Labor Fees have been paid, or will be paid, by Plaintiff.  (AFMIC SOF, ¶¶ 25-27, 30).  In fact, John Brawley, the construction superintendent for the general contractor, DHC, testified he prepared and issued the invoice after conferring with his boss.  Both of them hoped, but neither expected, that the invoice would be paid.  Because AFMIC did not pay the invoice when submitted, the general contractor has not pursued collection of that invoice issued nearly four and a half years ago.  (AFMIC SOF, ¶¶ 30).  To obligate AFMIC to foresee unpaid expenses incurred years after a loss – and after AFMIC made nearly $2,897,896.90 in payments on such loss – exceeds the bounds of foreseeability contemplated by the law.  *See U.S. Neurosurgical, Inc. v. Midwest Div.-RMC, LLC*, 303 S.W.3d 660, 667 (Mo. App. W.D. 2010) ("To recover damages, the party claiming damages resulting from a breach of contract must prove 'the existence and amount of damages

---

[3] Notably, Plaintiff does not even specifically allege or refer to the BPC Construction Management Fee in its Petition.

10

with reasonable certainty.'") (quoting *Am. Laminates, Inc. v. J.S. Latta Co.,* 980 S.W.2d 12, 23 (Mo. App. W.D. 1998)); *Harvey v. Timber Res., Inc.*, 37 S.W.3d 814, 819 (Mo. App. E.D. 2001) ("'certainty' means that damages have been suffered"). As such, Plaintiff should be barred from recovering the Fees as consequential damages for a claimed breach of the Policy.

### C. Plaintiff's Claim for Vexatious Refusal to Pay Fails as a Matter of Law.

Plaintiff's claim for vexatious refusal to pay pursuant to the Policy (Count II), because of either (1) AFMIC's failure to pay BPC's extraordinary management fee (first disclosed to AFMIC during written discovery in January 2017 and first explained to AFMIC's attorneys at deposition in April 2017) or (2) DHC's supervisory and labor fees, must fail as a matter of law.

"The law is well-settled that for an insured to obtain a penalty for an insurance company's vexatious refusal to pay a claim, the insured must show that the insurance company's refusal to pay the loss was willful and without reasonable cause or excuse, as the facts would have appeared to a reasonable person before trial." *Watters v. Travel Guard Int'l,* 136 S.W.3d 100, 108 (Mo. App. E.D. 2004). Section 375.420 R.S.Mo., authorizing such penalty, "is penal in nature and must be strictly construed." *Id*. at 109. "[T]he purpose behind allowing for vexatious-refusal penalties is to correct the evil of an arbitrary refusal for the sole purpose of delaying the plaintiff in the collection of the claim." *Id*. at 110. The statute was not, however, "intended to prevent a company from resisting payment where the question of law or fact about the claim was doubtful." *Hopkins v. Am. Econ. Ins. Co.*, 896 S.W.2d 933, 941 (Mo. App. W.D. 1995).

Though the question of reasonableness is generally a question of fact for a jury, such question can be determined by the court as a matter of law based upon undisputed facts. *Watters*, 136 S.W.3d at 109. Summary judgment has been granted on the issue of

11

reasonableness on vexatious refusal claims. *See, e.g.*, *id.* at 110; *Wunsch v. Sun Life Assur. Co. of Canada*, 92 S.W.3d 146, 153-54 (Mo. App. W.D. 2002) (considering the "unusual circumstances" presented to the insurer, the insurer "had reasonable cause, as a matter of law, to delay payment of Mr. Wunsch's policy proceeds to Ms. Wunsch. Reasonable minds could not differ, so summary judgment is proper."); *Wood v. Safeco Ins. Co. of America*, 980 S.W.2d 43, 55 (Mo. App. E.D. 1998) ("Insured has not presented any evidence of a vexatious and recalcitrant attitude on the part of Insurer at the time Insurer refused to cover Buyer's litigation, and the record does not show a genuine issue of material fact regarding any such attitude," entitling insurer to summary judgment); *Hocker Oil Co., Inc. v. Barker-Phillips-Jackson, Inc.*, 997 S.W.2d 510 (Mo. App. S.D. 1999) (trial court did not abuse is discretion in granting summary judgment on insured's vexatious refusal to pay claim as "[t]here were no Missouri cases that directly addressed the coverage issue presented" by the claim and a litigable issue existed).

AFMIC undisputedly made payments under the policy totaling $2,897,896.90. (AFMIC SOF, ¶ 7). While AFMIC denied payment of the DHC Supervisory/Labor Fees, presented more than two years after the Fire, Plaintiff's claim for vexatious refusal to pay must fail because AFMIC had no duty to pay that fee as a matter of law. *See Fischer v. First Am. Title Ins. Co.*, 388 S.W.3d 181, 190–91 (Mo. App. W.D. 2012) ("where an insurer had no duty to defend or indemnify under the insurance policy, there cannot be a claim for vexatious refusal to defend or indemnify"); *Arch Ins. Co. v. Sunset Fin. Servs., Inc.*, 475 S.W.3d 730, 735 (Mo. App. W.D. 2015) ("In light of our determination that [insurer] had no duty to indemnify [the insured] for the award, we necessarily conclude that the circuit court did not err in granting summary judgment to [insurer] on [insured's] claim of vexatious refusal to pay."). Plaintiff did not assert a claim for

the BPC Construction Management Fee until discovery in this litigation, initiated nearly six years after the Fire and approximately three years after AFMIC's final payment to Plaintiff for its covered loss. (AFMIC SOF, ¶¶ 14, 17, 19).  AFMIC's denial of Plaintiff's claim for Fees was made on the plain language of the Policy upon presentation of doubtful, if not specious, claims, thereby warranting summary judgment. *See State Farm Mut. Auto. Ins. Co. v. Shahan*, 141 F.3d 819, 824 (8th Cir. 1998) (insurer's refusal to pay was "based on the clear and unambiguous language of the insurance policies" and therefore "not without reasonable cause.").

Furthermore, there is no evidence suggesting a vexatious and recalcitrant attitude on AFMIC's part at the time it refused to reimburse Plaintiff for the Fees.  Nor can Plaintiff show a genuine issue of material fact regarding any such attitude from the existing record.[4]  Without such evidence, as a matter of law Plaintiff cannot succeed on its claim for vexatious refusal to pay. *See id.* (finding insured "fail[ed] to identify any evidence that could conceivably support a finding that [insurer's'] attitude was 'vexatious and recalcitrant.'  Absent such evidence, the district court's grant of summary judgment was proper.").

## IV.  CONCLUSION

After AFMIC paid substantial sums to Plaintiff and third-party contractors in connection with fire damage to three of Plaintiff's insured apartment buildings, Plaintiff seeks to recover "extraordinary" management fees and "supervisory and labor" fees submitted years following the Fire.  Plaintiff's claim for such fees cannot support its breach of contract claim as a matter of law because the Fees are not covered under the Policy.  With no coverage, Plaintiff's claim in Count I fails as a matter of law.  Additionally, Plaintiff's claim for vexatious refusal to pay fails

---

[4] Plaintiff did not depose any AFMIC witness and did not serve any written discovery to AFMIC.  The time for discovery closed September 1, 2017.  [Doc. 22, ¶ 3(e)].

13

8844618.1

due to the lack of coverage for such fees and the lack of evidence available to support such claim.  AFMIC, therefore, is entitled to summary judgment on Count II of Plaintiff's Petition.

WHEREFORE, Defendant American Family Mutual Insurance Company respectfully requests this Court grant its Second Motion for Partial Summary Judgment, and for such other and further relief this Court deems just and proper.

SANDBERG PHOENIX & von GONTARD P.C.

By: */s/ Anthony L. Martin*
Anthony L. Martin, #34521MO
Meghan E. Lewis, #62177MO
600 Washington Avenue - 15th Floor
St. Louis, MO  63101-1313
314-231-3332
314-241-7604 (Fax)
amartin@sandbergphoenix.com
mlewis@sandbergphoenix.com

*Attorneys for Defendant*
*American Family Mutual Insurance Company*

### Certificate of Service

I hereby certify that on the 28th day of September, 2017 the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

Mr. Nicholas A. Franke
nfranke@frankelawfirm.com

*/s/ Anthony L. Martin*

8844618.1