UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| NORWOOD-REDFIELD APARTMENTS LIMITED PARTNERSHIP, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 4:16-cv-00639-AGF |
| AMERICAN FAMILY MUTUAL INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM AND ORDER

This action for breach of contract and vexatious refusal to pay a claim under a business owner's policy of insurance is before the Court on Defendant American Family Mutual Insurance Company's Second Motion for Partial Summary Judgment (ECF No. 47). For the reasons stated below, the motion will be denied.

## BACKGROUND

For purposes of the motion before the Court, the record establishes the following. Plaintiff Norwood-Redfield Apartments Limited Partnership owns an apartment complex consisting of 32 separate buildings covered by the insurance policy at issue. On December 18, 2010, a fire damaged Buildings 6, 7, and 9. Plaintiff submitted a claim under the policy. Defendant made multiple payments, totaling $2,897,896.90, to Plaintiff and third-party contractors for the damage to Buildings 6, 7, and 9. Plaintiff filed this

lawsuit on April 5, 2016, seeking further payment under the policy.[1] Plaintiff asserts claims for breach of contract and vexatious refusal to pay.

On May 18, 2017, the Court[2] granted partial summary judgment in favor of Defendant, holding that Plaintiff was not entitled to recover the full policy limit in lieu of the actual value of the damaged property, and that Missouri's "valued policy statutes" did not require otherwise because not all of the 32 buildings insured under the policy were damaged, and, therefore, Plaintiff's loss was not a "total loss" under the statutes. ECF No. 44.

According to the parties, the only portions of Plaintiff's claims remaining are for a construction management fee for "extraordinary" repairs and certain supervisory and labor fees that Plaintiff claims to have incurred in connection with repairing and rebuilding the damaged buildings.[3]

For the purpose of this motion, there is no dispute that the fire damage constituted a "Covered Loss" under the policy, or that Buildings 6, 7, and 9 were part of the "Covered Property" under the policy. The Limit of Insurance under the policy is $31,773,600 and applies "to all of the premises described in the Declarations of coverage." ECF No. 48-2 at 44. The Declarations identify the 32 separate buildings.

---

[1] The lawsuit was filed in state court and removed by Defendant to this Court on May 9, 2016, on diversity grounds.

[2] At that time, this case was before the Honorable Carol E. Jackson.

[3] Plaintiff contends that there are also outstanding "business income" losses that Defendant has not paid under the policy. However, Plaintiff has not identified or provided any further detail with respect to such losses, either in the complaint or in response to Defendant's motion for summary judgment.

The policy's property coverage provision further states:

**A.  Coverage**

We will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss.

* * *

**E.  Property Loss Conditions**

* * *

5. Loss Payment

In the event of loss or damage covered by this policy

a.  At our option, we will either

(1)  Pay the value of lost or damaged property;

(2)  Pay the cost of repairing or replacing the lost or damaged property;

(3)  Take all or any part of the property at an agreed or appraised value; or

(4)  Repair, rebuild or replace the property with other property of like kind and quality . . . .

*Id.* at 59.

Paragraph (d) of this section, which was amended through an endorsement to the policy, provides that Defendant "will determine the value of Covered Property as follows":

(1)  At replacement cost without deduction for depreciation, subject to the following:

> (a) We will pay the cost to repair or replace, after application of the deductible and without deduction for depreciation, but not more than the least of the following amounts:
>
>> (i) The Limit of Insurance under Section I – Property that applies to the lost or damaged property;
>>
>> (ii) The cost to replace, on the same premises, the lost or damaged property with other property
>>
>>> i. Of comparable material and quality; and
>>>
>>> ii. Used for the same purpose; or
>>
>> (iii) The amount that you actually spend that is necessary to repair or replace the lost or damaged property.
>
> If a building is rebuilt at a new premises, the cost is limited to the cost which would have been incurred had the building been built at the original premises.

*Id.* at 79. The policy further provides that "[w]e will not pay on a replacement cost basis for any loss or damage: (i) Until the lost or damaged property is actually repaired or replaced; and (ii) unless the repairs or replacement are made as soon as reasonably possible after the loss of damage." *Id.* at 59.

At the time the policy was issued, Plaintiff had a property management agreement with Baumann Property Company ("BPC"). The property management agreement was entered into on June 20, 1988.[4] The agreement states that it is a month-to-month agreement cancelable by either party on not less than thirty (30) days' prior written

---

[4] The Agreement, attached as Exhibit 5 to Defendant's Statement of Uncontroverted Material Facts (ECF No. 48-5) identifies "Herbert J. Baumann" as the "Manager," is signed by "Herbert J. Baumann, Inc." as "Manager," and does not refer to BPC. But in his deposition, Herbert J. Baumann testified that he is the president of BPC and that BPC has been the property manager for Plaintiff for 31 years, and that BPC has a written agreement with Plaintiff. Baumann dep., ECF No. 51-2 at 8:19-25, 9:25-10:9.

notice. ECF No. 48-5 at ¶ 2. The agreement contains a provision for "extraordinary repairs, reconstruction or rehabilitation," which provides that "[i]f it becomes necessary to make any extraordinary repairs or engage in an extensive reconstruction or rehabilitation of the Property or any part thereof . . . , the Manager shall receive an additional fee therefore in an amount equal to the percentage of the total cost of such extraordinary repairs, reconstruction or rehabilitation specified in Exhibit A. . . ." *Id.* ¶ 11. The percentage specified in Exhibit A is 10%.

Plaintiff seeks to recover from Defendant the 10% construction management fee, totaling $260,672.30, which Plaintiff claims it paid to BPC for the repairs and rebuilding to Buildings 6, 7, and 9. Plaintiff paid this fee over time, making payments from September 2013 through August 2016.

The parties dispute when and how Plaintiff first presented the claim for the construction management fee to Defendant. Plaintiff contends that it notified Defendant of its claim for the fee "early on" after the fire, pointing to the deposition of Baumann, in which Baumann stated that he made a verbal demand upon Defendant's representative for the fee "early on," and that he believed that Defendant responded in writing that it was not obligated to pay the fee. ECF No. 55 at ¶ 7; Baumann dep., ECF No. 51-2 at 138:18-139:3. Defendant contends that Plaintiff did not make such a demand in writing until discovery in this lawsuit in January 2017. Defendant points to Baumann's further deposition testimony that he never submitted an invoice for the fee to Defendant and that he did not recall whether his conversation with Defendant's representative was

documented anywhere.  ECF No. 56 at ¶ 7; Baumann dep., ECF No. 51-2 at 172:16-173:10.  Defendant refused to reimburse Plaintiff for the construction management fee.

Plaintiff also seeks to recover from Defendant "supervisory and labor fees" totaling $199,264.80, plus interest, which were invoiced by Danny Hornbeck Construction Company, Inc. ("DHC"), the contractor that Plaintiff, through BPC, engaged to rebuild Buildings 6, 7, and 9.  DHC submitted its invoice to Plaintiff for the supervisory and labor fees on February 22, 2013, after DHC had completed most of its construction work.  In his deposition taken on August 23, 2017, a project manager with DHC, John Brawley, testified that the $199,264.80 invoice had not been paid by Plaintiff.  Brawley dep., ECF No. 51-3 at 64:3-5.  Brawley also testified that he had never billed for such supervisory and labor fees before; that his thinking regarding attempting to get the fees was that it was "something [he was] going to try.  If it worked, great.  If it didn't work, fine, and [he was] going to move on"; and that he "didn't know if [the invoice] was going to be paid or not."  *Id.* at 63:9-13; 66:12-25.

Plaintiff submitted a claim to Defendant for the supervisory and labor fees by emailing the invoice to Defendant's representative on February 22, 2013, and asking Defendant to process payment "a.s.a.p."  ECF No. 48-10 at 3.  Defendant denied the claim.  The only evidence of such denial in the record is a response email from Defendant's representative to Plaintiff on March 6, 2013, stating that he believed the invoice was sent in error because he believed that payment for the supervisory and labor fees were inclusive "within the Overhead/Profit we agreed to on this claim, which we have been paying for with each payment issued."  *Id.* at 1.

## ARGUMENTS OF THE PARTIES

Defendant filed this motion for summary judgment on September 28, 2017. Defendant argues that the breach of contract claim fails as a matter of law because the construction management and supervisory and labor fees "are not covered under the Policy" because they do not constitute "direct physical loss of or damage to" covered property.[5] ECF No. 49 at 4-5. Defendant further argues that there is no evidence that Plaintiff paid or ever intended to pay the supervisory and labor fees. Finally, Defendant contends that Plaintiff's claim for vexatious refusal to pay also fails as a matter of law because it is derivative of the breach of contract claim and because there is no evidence suggesting a "vexatious and recalcitrant attitude" on Defendant's part in refusing to reimburse Plaintiff for the fees.

In response, Plaintiff notes that the policy required Defendant to pay the lesser of the limit of insurance, the cost to replace the lost or damaged property with other property of comparable material and quality, or the amount Plaintiff actually spent that is necessary to repair or replace the lost property. Plaintiff argues that Defendant invoked the third option here with respect to Buildings 6, 7, and 9, and that Defendant is therefore required to pay the amounts Plaintiff actually spent on repairing and rebuilding the buildings. Plaintiff argues that the fees at issue are amounts Plaintiff actually spent on repairs and rebuilding, and that any assertion that Plaintiff did not spend such amounts is a question of fact for the jury. Finally, Plaintiff contends that a reasonable jury could find

---

[5] Defendant also argues that the fees are not covered under the "business income" section of the policy and cannot be characterized as consequential damages. Because Plaintiff does not dispute these arguments, the Court will not address them.

that Defendant's continued non-payment of the full amount of the loss, more than six years after the fire, constitutes a vexatious refusal to pay.

In reply, Defendant states that it does not dispute that Plaintiff paid the construction management fee to BPC or that Plaintiff had the right to pay that fee to BPC. But Defendant reiterates that the fee is not a covered "direct physical loss of or damage to" the property. Further, Defendant argues that Plaintiff cannot establish that Plaintiff demanded payment of the management fee in writing from Defendant before filing suit. Defendant contends that "[c]ommon sense requires a party seeking payment of over $260,000 to demand payment before suit and to provide written support for that demand." ECF No. 57 at 5. With respect to the supervisory and labor fees, Defendant reiterates its argument that Plaintiff never paid and does not intend to pay for such fees.

## **DISCUSSION**

Federal Rule of Civil Procedure 56(a) provides that summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In ruling on a motion for summary judgment, a court must view the facts in the light most favorable to the non-moving party and must give that party the benefit of all reasonable inferences drawn from the record. *Combs v. The Cordish Cos., Inc.*, 862 F.3d 671, 680 (8th Cir. 2017).

**Breach of Contract**

"Interpretation of an insurance policy is a matter of state law." *Progressive N. Ins. Co. v. McDonough*, 608 F.3d 388, 390 (8th Cir. 2010) (citation omitted). When interpreting an insurance policy, courts must give "the policy language its plain meaning,

or the meaning that would be attached by an ordinary purchaser of insurance." *Doe Run Res. Corp. v. Am. Guarantee & Liab. Ins.*, 531 S.W.3d 508, 511 (Mo. 2017) (citation omitted). "If the policy language is clear and unambiguous, it must be construed as written. An ambiguity exists only if a phrase is reasonably open to different constructions." *Id.* (citations omitted). "Any ambiguity is resolved in favor of the insured." *Owners Ins. Co. v. Craig*, 514 S.W.3d 614, 617 (Mo. 2017) (citation omitted).

Defendant does not dispute that the replacement cost provision requiring payment for the amount Plaintiff "actually spend[s] that is necessary to repair or replace the lost or damaged property," applies here.[6] Nor does Defendant dispute, in its motion and briefs before the Court, that the construction management and supervisory and labor fees (to the extent they were paid) were "necessary" to repair or replace the damaged buildings.

As to the construction management fee, Defendant also does not dispute that the fee was actually paid by Plaintiff. And although Defendant argues that Plaintiff did not demand payment of the fee in writing before filing suit, Defendant does not point to any provision of policy imposing such a requirement. Defendant has not argued that the lack of a written demand, or the timing of any demand, for the fee was contrary to the requirements for coverage under the policy; Defendant only argues that it was contrary to "common sense." Therefore, the Court will deny Defendant's motion for summary judgment as to the construction management fee. *See, e.g.*, *One Place Condo., LLC v.*

---

[6] The parties have not provided evidence or argument as to the alternative portions of the replacement cost provision, namely, the applicable limit of insurance that applies to the damaged buildings, or the cost to replace those buildings on the same premises with other property of comparable material and quality, and used for the same purpose.

*Travelers Prop. Cas. Co. of Am.*, No. 11 C 2520, 2015 WL 2226202, at *21-22 (N.D. Ill. Apr. 22, 2015) (denying summary judgment as to insurance coverage claim for 5% construction management fee to project manager, which the plaintiff alleged it incurred to repair damage to property covered under a similarly-worded insurance policy, because such fee was recoverable to the extent necessary for the repair).

As to supervisory and labor fees, the parties' dispute turns on whether Plaintiff "actually spen[t]" the amount invoiced for the fees. Defendant points to evidence that Plaintiff was invoiced for the fees in February 2013, and as of August 2017, Plaintiff had not yet paid the fees. The Court concludes that "actually spen[t]" in this context includes the incurring of a valid debt for completed repair or replacement of the damage. To the extent the phrase is ambiguous, the ambiguity is resolved in favor of Plaintiff, the insured. *See, e.g.*, *Northrop v. Allstate Ins. Co.*, 720 A.2d 879, 882-83 (Conn. 1998) (rejecting an insurer's argument that homeowners were required to have actually paid for a repair job in order to be reimbursed for it, holding that the phrase "the amount actually and necessarily *spent* to repair or replace the damaged building structure" included "the incurring of a valid debt" for the repair or replacement of the damage).

To the extent that Defendant contends that the debt for the supervisory and labor fees was not valid because Plaintiff never intended to pay the fees and DHC never intended to be paid—in other words, the invoice for the fees was a sham—Defendant's evidence on this point, while perhaps enough to convince a jury, is not so clear as to warrant judgment as a matter of law. *See, e.g.*, *One Place Condo.*, 2015 WL 2226202, at *21-22 (denying summary judgment as to the construction management fee because a

question of fact existed as to whether the insured actually incurred the fee in light of the facts that the fee had not yet been paid and there were family ties between the insured and its property manager indicating that the fee might be a sham; concluding that these were issues for the jury to resolve). The Court will deny summary judgment as to the supervisory and labor fees.

**Vexatious Refusal to Pay**

"To establish a claim under Missouri's vexatious refusal statute, Mo. Rev. Stat. § 375.296, [an insured must] prove (1) [it] had an insurance policy with [the insurer]; (2) [the insurer] refused to pay; and, (3) [the insurer's] refusal was without reasonable cause or excuse." *Olga Despotis Tr. v. Cincinnati Ins. Co.*, 867 F.3d 1054, 1066 (8th Cir. 2017). "Under Missouri law, vexatious refusal is derivative of a breach-of-contract claim." *Aziz v. Allstate Ins. Co.*, 875 F.3d 865, 869 (8th Cir. 2017).

"Whether a refusal to pay is vexatious must be determined by the situation as presented to the insurer at the time it was called on to pay," and in general, "[w]hether the refusal is reasonable is a question of fact for the jury, rather than a question of law . . . ." *Macheca Transp. Co. v. Philadelphia Indem. Ins. Co.*, No. 4:04-CV-178CEJ, 2008 WL 851295, at *7 (E.D. Mo. Mar. 26, 2008) (citing *Legg v. Certain Underwriters at Lloyd's of London*, 18 S.W.3d 379, 387 (Mo. Ct. App. 1999)). "Direct and specific evidence to show vexatious refusal is not required[;] the jury may find vexatious delay upon a general survey and a consideration of the whole testimony and all of the facts and circumstances in connection with the case." *Wagoner v. State Farm Mut. Auto. Ins. Co.*, No. 4:16-CV-00312 JAR, 2017 WL 5478524, at *4 (E.D. Mo. Nov. 15, 2017) (quoting *DeWitt v. Am.*

*Family Mut. Ins. Co.*, 667 S.W.2d 700, 710 (Mo. 1984)).  On the record before it, including the factual disputes discussed above with respect to the breach of contract claim, the Court cannot resolve the vexatious refusal claim as a matter of law.  Therefore, the Court will deny summary judgment on this claim.

## **CONCLUSION**

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Defendant American Family Mutual Insurance Company's Second Motion for Partial Summary Judgment is **DENIED**.  ECF No. 47.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 6th day of February, 2018.